**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**KRISTINA MARIE BARR,**

Plaintiff**,**

v.                                                   **CIVIL ACTION NO.: 2:16-CV-42**
                                                    **(JUDGE BAILEY)**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

Defendant.

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

On May 27, 2016, Plaintiff Kristina Marie Barr ("Plaintiff"), by counsel Jan Dils, Esq.,

filed a Complaint in this Court to obtain judicial review of the final decision of Defendant Nancy

A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner" or "Defendant"),

pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). (Compl.,

ECF No. 1).   On July 27, 2016, the Commissioner, by counsel Helen Campbell Altmeyer,

Assistant United States Attorney, filed an answer and the administrative record of the

proceedings.   (Answer, ECF No. 6; Admin. R., ECF No. 7). On September 20, 2016, and

October 17, 2016, Plaintiff and the Commissioner filed their respective Motions for Summary

Judgment.   (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 11; Def.'s Mot. for Summ. J.

("Def.'s Mot."), ECF No. 13).   Following review of the motions and memoranda by the parties

---

[1] After this suit was filed, but before this Order was entered, Nancy A. Berryhill replaced Carolyn W. Colvin as the
Acting Commissioner of Social Security. Accordingly, pursuant to Rule 25(d), Fed. R. Civ. P., and 42 U.S.C. §
405(g), Nancy A. Berryhill is substituted for Carolyn W. Colvin.

and the administrative record, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge, recommending that the decision of the Commissioner be vacated and the case remanded for further proceedings, for the reasons that follow.

## II.   PROCEDURAL HISTORY

On April 12, 2012, Plaintiff protectively filed her first application under Title XVI of the Social Security Act for Supplemental Security Income ("SSI"), alleging disability that began on November 30, 2008, (R. 137), later amended by Motion to Amend Alleged Onset Date to April 10, 2012 (R. 155).  This claim was initially denied on December 31, 2012 (R. 83) and denied again upon reconsideration on February 15, 2013. (R. 91).  On March 7, 2013, Plaintiff filed a written request for a hearing (R. 94), which was held before United States Administrative Law Judge ("ALJ") Mary C. Peltzer on September 3, 2014 in Charlottesville, VA. (R. 29).  Plaintiff, represented by counsel Ambria Adkins, appeared and testified, as did Andrew Beale, an impartial vocational expert. Id. On November 24, 2014, the ALJ issued an unfavorable decision to Plaintiff, finding that she  was not disabled within the meaning of the Social Security Act. (R. 8). On March 29, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1).

## III.   BACKGROUND

### A.   Personal History

Plaintiff was born on December 2, 1958, and was 53 years old at the time she  filed her first SSI claim. (R. 137-143). She completed her GED (R. 137). Plaintiff's prior work experience included dishwasher, homemaker, line worker at a poultry plant, and residential trainee. (R. 161). She was married, but separated at the time she filed her initial claim, and had been separated for twenty years at the time of the administrative hearing. (R. 37). She has four grown adult children

who do not live with her, but Plaintiff's sixteen-year-old granddaughter has lived with her since birth. Id. Plaintiff alleges disability based on multiple mental and physical conditions, including chronic obstructive pulmonary disorder, panic attacks, thyroid disease, high cholesterol, arthritis, anxiety, depression, and acid reflux. (R. 160).

**B.     Relevant[2] Testimonial Evidence**

At the ALJ hearing held on September 3, 2014, Plaintiff testified that she has a GED. (R. 37). She last worked in 2007-2008 for Aging and Family services in Mineral, where she was employed full time. Id. In this job, Plaintiff cooked and cleaned for elderly clients in their home. (R. 38). Her duties did not extend beyond "daily routine" tasks; she did not help them take medications, keep them company, or drive clients to appointments. Id.  She stopped working there in 2008 because she did not feel she was performing her job adequately, pursuant to her depression and panic attacks. Id.

Prior to that, Plaintiff worked for Botanic Comprehensive Diagnostic assisting handicapped clients. (R. 38). In this job, she cooked meals for clients and helped them bathe and get ready for bed. Id.  Plaintiff clarified that she did not physically help her clients bathe, but merely "watch[ed] them." (R. 39). In both of these positions, the heaviest things Plaintiff lifted and carried were laundry and groceries. (R. 39).  Both also required her to mainly be on her feet for the duration of her shift. Id.

**C.     Vocational Evidence**

Also testifying at the hearing was Dr. Andrew Beale (spelled "phonetic[ally]" in the transcript as "Baliff", R. 29), a vocational expert ("VE").  Dr. Beale characterized Plaintiff's past

---

[2] Plaintiff raises no issues with regard to steps 1 – 3 of the ALJ's analysis, but rather contests only the ALJ's determination that Plaintiff "had acquired the skill of 'caregiving' that would transfer to the job of companion (R. 22-23)." (ECF No. 12 at 6). As such, review of evidence is limited to that which is relevant to the issues raised.

work as a home care giver, which is semi-skilled with medium exertional demands and a specific

vocational preparation ("SVP") of 3. (R. 51). The ALJ then questioned Dr. Beale regarding

transferable skills, and Plaintiff's ability to perform other work:

Q:    Were there any skills prior to that semi-skilled position that . . . are transferable to either a light or sedentary exertional level?

A:    The care giving skills would transfer to light work as a companion. And that DOT code number is 309.677-010 and it's semi-skilled, SVP of 3, and light. And there are, approximately, 230,000 positions such as that in the national economy.

Q:    All right, thank you. All right, please assume a hypothetical individual that is vocationally situated as is the claimant. And that hypothetical individual can perform all functions of light work with occasional stairs and ramps, occasional ladders, ropes, and scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling. No more than occasional exposure to extreme cold, extreme heat, humidity, respiratory irritants, such as dust and fumes. No workplace hazards such as, dangerous moving machinery and unprotected heights. Would such an individual be able to do the companion position?

A:    Would not be able to do her past work, no. Because it was a higher exertional level.

Q:    Right. But, no, could the companion position –

A:    Oh, I'm sorry. Yes, such a person could perform work as a companion, yes.

Q:    And is there other work that such an individual could perform?

A:    Yes, your honor. Work, for example, as a cleaner. Someone who comes in the buildings frequently after hours to do light cleaning. Representative DOT code number is 323.687-014. It is an SVP 2, light occupation, and there are approximately 350,000 such positions in the national economy. Or work as a stock checker. A representative DOT code number for this work is 299.667-014. It is an SVP 2, light occupation, and there are approximately 127,000 positions such as that in the national economy. Or work as a laundry worker. The DOT code number for that type of work is 361.687-014. It is unskilled, SVP 2, and light and there are approximately 106,000 positions such as that in the national economy.

Q:    And is this testimony consistent with the DOT?

A:    I believe so, your honor, yes.

(R. 51-53). Finally, the ALJ questioned Dr. Beale about Plaintiff's ability to work if she  is

completely credible as to the severity of her condition:

Q:    And now for the second hypothetical, please assume the same limitations as the first hypothetical, but please assume that now there should be no ladders, ropes, or scaffolds. Still the occasional workplace hazards such as, the dangerous moving machinery, but there should be no unprotected heights. And there should be no more than frequent handling and fingering.

A:      That still would allow for performance of the occupations that I've identified previously.

Q:      And you already indicated that there were no transferable skills to a sedentary exertional level, correct?

A:      That is correct, your honor.

Q:      And what is the ordinary tolerance for absenteeism?

A:      According to the Department of Labor, for entry level and hourly positions, such as I've identified, workers are allowed 17 or 18 days a year of absences. That equates to, about, a day and half a month. So anything in excess of a day and a half a month on an ongoing basis is not going to allow for competitive work.

Q:      And what is the on task requirement to maintain competitive employment?

A:      Well I think, in general, other than when on break, the employer's expectation is that the worker be available and able to carry out work related activity.

Q:      What if the hypothetical individual had to lay down during the work day, outside of the normally prescribed breaks, would that preclude [INAUDIBLE] employment?

A:      Yes, your honor. If this occurred on an ongoing basis it would, yeah.

(R. 53-55). Plaintiff's attorney next questioned Dr. Beale:

Q       Given the hypothetical limitations given in hypothetical's one and two, since the same jobs were allowed for both hypotheticals, if there was an additional limitation of simple, routine tasks in a low stress work environment, would they still be able to do all of those jobs?

ALJ:    And what's the --

VE:     Well --

ALJ:    I'm sorry, just what's the definition of, "Low stress?" Is that just the simple, routine tasks is what is considered as low stress or in other words?

ATTY: No, no pace or production -- rate, pace production requirement. And also no interaction with the general public.

VE:     I think that still would allow for the unskilled occupations that I've identified. They tend not to be production in nature.

ATTY: Would that

VE:     Yes, I would think you could -- I'm sorry.

ATTY: It's all right. Would that eliminate the companion position?

ALJ:    Well that was semi-skilled, so -

VE:     Yes.

(R. 55-56).

**D.      Work History Report**

On a work history report form, Plaintiff stated that she had worked "t[aking] care of [the] handicapp[ed]" from 2003 – 2004. (R. 175). She worked eight hours per day, five days per week.

(R. 176). She cooked, cleaned, did laundry, bathed clients, put them to bed, and helped them get dressed. Id. She used machines, tools, or equipment, and wrote or completed reports. Id. Plaintiff could not remember how many hours each day she engaged in exertional tasks or lifted or carried things. Id.

She also worked "t[aking] care of [the] elderly" with "daily tasks" at Family Aging from 2007-2008. (R. 175, 177). She worked eight hours a day, five days per week. (R. 177). She used machines, tools, or equipment, and wrote or completed reports. Id. Plaintiff could not remember how many hours each day she engaged in exertional tasks or lifted or carried things. Id.

## IV.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2006). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

[Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920 (2011).]

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920 (2011). If the claimant is determined to be disabled or not

disabled at one of the five steps, the process does not proceed to the next step. Id.

## V.    ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the five-step sequential evaluation process described above, the ALJ made the

following findings:

1.    The claimant has not engaged in substantial gainful activity since April 12, 2012, the application date (20 CFR 416.971 *et seq*.).

2.    The claimant has the following severe impairments: osteoarthritis, Heberden's nodes, chronic dorsolumbar strain, asthma, and obesity (20 CFR 404.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: occasional stairs and ramps; occasional ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; and no more than occasional exposure to extreme cold, extreme heat, humidity, respiratory irritants, such as dust and fumes, and workplace hazards, such as dangerous moving machinery and unprotected heights.

5.      The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.      The claimant was born on December 2, 1958, and was 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. The claimant subsequently changed age category to advanced age. (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 416.969, 416.969(a) and 416.968(d)).
. . . Prior to the attainment of age 55, transferability of job skills is not material . . . Therefore, I make the following alternative findings for step five of the sequential evaluation process.
In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exits in significant numbers in the national economy that the claimant can also perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a).

9.      The claimant has not been under a disability, as defined in the Social Security Act, since April 12, 2012, the date the application was filed (20 CFR 404.920(g)).

(R. 11-24).

As noted, the ALJ's findings and conclusions through Step 3 are not at issue; only the determination of substantial gainful activity[3] and transferable skills at Step 4, and subsequently, as a result, the determination at Step 5.

## VI.    DISCUSSION

### A.    Standard of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and

---

[3] Plaintiff was not engaged in substantial gainful activity since her amended onset date at Step 1 (R. 13); the determination of SGA here rather became relevant at Step 4, as it related to prior relevant work and transferable skills.

whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1968)). However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment…if the decision is supported by substantial evidence." <u>Hays</u>, 907 F.2d at 1456 (citing <u>Laws</u>, 368 F.2d at 642; <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 529 (4th Cir. 1962)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

**B.      Contention of the Parties**

Plaintiff, in her Motion for Summary Judgment, asserts that the Commissioner's decision "is contrary to the law and is not supported by substantial evidence." (Pl.'s Mot. at 1). Specifically, Plaintiff alleges that the ALJ erred at step four of her analysis in finding Plaintiff's past work as a homemaker to be "substantial gainful activity" ("SGA"), arguing it "did not constitute past relevant work from which she would have transferable skills that were vocationally advantageous." (ECF No. 12 at 1). "As such, the ALJ's step five finding that Barr is not disabled does not have the support of substantial evidence, and the decision denying benefits

should be reversed or remanded." Id. (Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br."), ECF No. 12). Plaintiff asks the Court to "remand the case to the Commissioner with instructions to issue a new decision based on substantial evidence and proper legal standards." Id.

Defendant, in her Motion for Summary Judgment, asserts that the ALJ's decision is "supported by substantial evidence and should be affirmed as a matter of law." (Def.'s Mot.). Specifically, Defendant alleges that the ALJ's findings of substantial gainful activity and transferable skills are both supported by substantial evidence in the record. (Def.'s Br. in Supp. Of Def.'s Mot. for Summ. J. ("Def.'s Br.") at 6, ECF No. 14).

**C.     Analysis of the Administrative Law Judge's Decision**

### 1.  The ALJ's finding of Past Relevant Work and Substantial Gainful Activity at Step Four

"Past relevant work is work [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [a claimant] to learn to do it. (See § 404.1565(a).)" 20 CFR § 404.1560. A determination of past relevant work ("PRW"), including whether past work was substantial gainful activity ("SGA") is significant because whether a finding of transferable skills can be dispositive as to whether the ALJ reaches a finding of disability or non-disability under the vocational rules.

Here, there is no dispute that Plaintiff performed these jobs within the past 15 years. The parties also agree that, in 2007, monthly earnings of $900.00 would create a rebuttable presumption of substantial gainful activity. (ECF Nos. 12 at 7, 14 at 5). It is here that the parties diverge, disputing whether Plaintiff's prior work constituted substantial gainful activity. Plaintiff argues that the ALJ failed to adequately develop the record as to the length of Plaintiff's employment, and as a result, it lacks substantial evidence to sustain a presumption. (ECF No. 12 at 7). Specifically, because Plaintiff's yearly earnings were $6646.30, but the record does not

show how many months in 2007 Plaintiff held that employment, the ALJ lacked sufficient information to calculate whether Plaintiff's average monthly earnings exceeded $900.00 per month, and as a result, whether that work was substantial gainful activity. Id.

The Commissioner argues that substantial evidence is present in the record because Plaintiff's work history report and testimony both state that Plaintiff worked full-time, and Plaintiff listed her rate of pay as $7.25 per hour. (ECF No. 14 at 6). Thus, the Commissioner argues, it is "obvious" that a forty-hour work week at a rate of $7.25 per hour would yield monthly income greater than $900.00 per month. Id. Plaintiff argues in her reply that this *post-hoc* rationalization from the Commissioner is not a permissible substitute for the ALJ's duty to conduct an analysis in conformity with the regulations and explain the evidence supporting that decision sufficient for a court to meaningfully review it. (ECF No. 15 at 1-2) ("absent from the Commissioner's response . . . is any citation to case law that allows the Commissioner or this Court to perform such an analysis on behalf of the ALJ"). For the following reasons, the undersigned is compelled to agree.

20 CFR § 404.1574 governs how substantial gainful activity is evaluated. If a claimant has worked as an employee, the amount of "earnings may show [a claimant] ha[s] done substantial gainful activity." 20 CFR § 404.1574(a)(1). "The income guidelines of 20 CFR § 404.1574(b)(2) do not automatically disqualify a disability claim." Payne v. Sullivan, 946 F.2d 1081 (4th Cir. 1991), regardless of whether earnings fall above or below the guideline. Rather, the guidelines' amounts create a rebuttable presumption. Id. Average monthly earnings that exceed the guidelines "will ordinarily show that [a claimant has] engaged in substantial gainful activity," Id. at *1083, citing 20 CFR § 404.1574(b)(2), though a claimant may rebut. Conversely, average income falling below the guidelines creates a rebuttable presumption that a

claimant has *not* engaged in substantial activity, which the Commissioner may rebut. 20 CFR § 404.1574(c). The presumption of substantial gainful activity based on earnings should "not [] be rigidly applied." Id. at *1083.

The ALJ explained that she found Plaintiff's former job was past relevant work, in relevant part, because it "constituted substantial gainful activity, within the meaning of the Regulations." (R. 22). There is no further explanation.[4] The ALJ thus provided no basis for that finding – no indication of whether that determination was based on income alone, or *how* she calculated monthly average income, *if* she did so.

Further, in determining a claimant's amount of earnings, 20 CFR § 404.1574(b) directs that the Commissioner "*will generally average your earnings* for comparison with the earnings guidelines in paragraphs (b)(2) and (3) of this section." (emphasis added). Thus, knowing only Plaintiff's yearly income, an average would typically be performed by dividing $6646.30 by twelve months – which, as Plaintiff points out, would result in an average monthly earning amount of well under $900.00 monthly ($553.85), leading to a presumption that Plaintiff had *not* engaged in substantial gainful activity. Whether the ALJ performed some other calculation for a lesser period of time, or by some other means; or whether her analysis included any other factors besides income, are all questions the undersigned cannot meaningfully review for substantial evidentiary support, in absence of any explanation from the ALJ.

Indeed, an ALJ's decision that at least articulates as to earnings that a claimant "is earning an average of more than [the guideline amount] per month (20 CFR 404.1574)," along

---

[4] **The claimant is unable to perform any past relevant work (20 CFR 416.965).**
The claimant has past relevant work as a home caregiver, which the vocational expert testified is medium, semiskilled work with an SVP of 3, DOT #354.377-014. I find that this former job was performed within the relevant time period, lasted long enough for the claimant to learn it, and **constituted substantial gainful activity, within the meaning of the Regulations.**
(R. 22) (emphasis added).

with an explanation of the other factors the ALJ considered – including a plaintiff's current performance of SGA, among other things – provides enough information to determine how the determination of SGA was made. <u>Payne v. Sullivan</u> 946 F.2d 1081 (4th Cir. 1991). <u>See also Walls v. Shalala</u>, 8 F.3d 823 (4th Cir. 1993) ("Walls earned $3757 in 1987 and $2056 in 1988. There was little evidence of her earnings in 1989").

The Commissioner argues here that substantial evidence supports that determination because it could be calculated by using Plaintiff's self-reports of her hours and rate of pay. However, the ALJ herself did not so state. The court cannot assume an explanation that the ALJ did not provide, nor can it resolve conflicts in the evidence. <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). "Lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence." <u>Ash v. Colvin</u>, 2014 WL 1806771, *8 (N.D. W.Va. May 7, 2014) (Absence of the issue in the ALJ's written decision rendered it "impossible" to determine whether the ALJ even realized there was an issue that required consideration, or "what conclusions, if any, the ALJ reached after consider[ation]") (internal citations omitted). When, as here, the regulations direct the ALJ to analyze an issue, "most courts within the Fourth Circuit have found that the [] analysis must be explicit." <u>Id.</u> at *8 (discussing the duty to conduct an age analysis). "Findings with respect to the question of whether plaintiff's work constituted substantial gainful activity should 'indicate explicitly that all relevant evidence has been weighed and its weight.'" <u>Black v. Shalala</u>, 879 F.Supp.39, 40-41 (S.D. W.Va. 1994) (remanding for that purpose).

If no plausible calculation could have provided a different result, the failure to explain further may have been of less import. <u>Ash</u>, 2014 WL 1806771 at *9, citing <u>Bowie v. Commissioner</u>, 539 F.3d 395, 402 (6th Cir. 2008). Here, however - as both parties acknowledge -

due to Plaintiff's age and education, whether there is substantial gainful activity, and subsequently past relevant work, changes the outcome of the analysis from a finding of "disabled" to "not disabled" at step four. POMS DI 25015.017. Because the issue is thus outcome-dispositive, remand is warranted. Ash, at fn. 6. Further, this flaw renders subsequent findings of PRW and transferable skills also likewise flawed, as SGA is the part of the foundation on which the other findings rest.

## 2. ALJ's reliance on VE Testimony

Although an ALJ's reliance on VE testimony may suffice in some instances, it is not true that an ALJ's reliance on the testimony of a VE will always suffice. "Occupational evidence provided by a VE [] generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p. "SSA adjudicators *may not rely on evidence provided by a VE*, VS, or other reliable source of occupational information *if that evidence is based on underlying assumptions or definitions that are inconsistent* with our regulatory policies or definitions." SSR 00-4p. (emphasis added). SSR 00-4p also explicitly "emphasizes that *before* relying on VE [] evidence . . . our adjudicators *must*:"

- Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and
- Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p. (emphasis added). "The adjudicator must [determine] if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony." Id. The Commissioner's own regulations thus mandate that the ALJ consider an issue and explain how a conflict was resolved. The Commissioner's argument that "[no] more detailed inquiry was

required" of the ALJ here (ECF No. 14 at 9) thus fails, because here there is at least one such issue, obvious at the outset.

The VE testified that Plaintiff's prior work was characterized as "home care giver," "DOT code number 354.377-014," which was "semi-skilled, SVP of 3, and medium, in terms of its exertional demands." (R. 51). However, it is not clear that Plaintiff's prior work *was* properly categorized as such. The occupational information in the DOT for this work provides:

> **354.377-014 HOME ATTENDANT (personal ser.) alternate titles: home health aide**
> Cares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks: Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters. Purchases, prepares, and serves food for patient and other members of family, following special prescribed diets. Assists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs. Assists patient to dress, bathe, and groom self. Massages patient and applies preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation. Administers prescribed oral medications under written direction of physician or as directed by home care nurse. Accompanies ambulatory patients outside home, serving as guide, companion, and aide. Entertains patient, reads aloud, and plays cards or other games with patient. Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands. May maintain records of services performed and of apparent condition of patient. May visit several households to provide daily health care to patients.
> *GOE: 10.03.03 STRENGTH: M GED: R3 M2 L2 SVP: 3 DLU: 77*[5]

Even a cursory review of this description reveals that Plaintiff's description of this job arguably included, out of this entire list of tasks, only two - cleaning, and the preparation of meals. (R. 38-39). Plaintiff testified that she did not physically help her clients bathe, just oversaw (R. 39); she also did not "keep them company" (entertain), help them take medications, or take them to appointments. (R. 38). Plaintiff did not testify that she would go *get* groceries or *do* laundry, but merely that she lifted groceries and laundry when "they brought them in." (R. 39). The ALJ questioned Plaintiff as to those precise tasks, presumably cognizant of this description in the DOT. (R. 38-39). However, Plaintiff answered each in the negative:

---

[5] U.S. Department of Labor, *Dictionary of Occupational Titles ("DOT")* 257 (354.377-014) (4th Ed. 1991).

| Q | And in 2007 and 2008 you worked for Aging and Family Services in Mineral? |
|---|---|
| A | Yes, ma'am. |
| Q | And what did you do there or for them? |
| A | Went into the elderly's home and, like, cooked and cleaned for them. |
| Q | And was it more just helping them out with their day to day activities or did you also help them out with, like, their medications, keeping them company, anything like that? Taking them to and from appointments? |
| A | No, it was just to do their daily routine with them. |

(R. 38).

| Q | And what did you do when you worked for Botanic Comprehensive Diagnostic? |
|---|---|
| A | I worked with the handicapped. |
| Q | And what did you do with the handicapped? |
| A | Like cook their meals and I helped them bathe and get ready for bed. |
| Q | And when you were helping them get bathed was it just to make sure they didn't hurt themselves or did you physically, like, have to help them in and out of the shower and physically have to help them bathe? |
| A | No, they did that on their own I just had to watch them. |

(R. 38-39). The VE testified that he had listened to this testimony, yet, the VE did not reference

the discrepancy at all, nor does the hearing transcript evidence any such inquiry or explanation:

| Q | And have you . . . listen[ed] to the claimant's testimony regarding her vocational background? |
|---|---|
| A | Yes, I have. |
| Q | And can you please characterize for us the past work that she and I discussed earlier. |
| A | Yes. Her work as a home care giver, the DOT code number is 354.377-014. It is semi-skilled, SVP of 3, and medium, in terms of its exertional demands. |
| Q | Okay, thank you. |

(R. 51). The ALJ then proceeded to classify Plaintiff's work as such anyway without explanation

as to why. The ALJ explained, "[p]ursuant to SSR 00-4p, I have determined that the vocational

expert's testimony is consistent with the information contained in the Dictionary of Occupational

Titles." (R. 24). It is unclear how this conclusion was reached as to the classification of

Plaintiff's prior work in light of clear inconsistencies, especially since the ALJ's determination

appears to conflict with the clear directives of SSR 00-4p. Further, there is no evidence that the

ALJ considered the issue, made any attempt to resolve it, or reconciled it with the inconsistency in the DOT.

In any event, an ALJ's acceptance of VE testimony that is inaccurate is reversible error. English v. Shalala, 10. F.3d 1080 (4th Cir. 1993), with a possible exception of when an inconsistency with the DOT's definitional requirements, strictly construed, would lead to the absurd result of disqualification for *any* job for a claimant who can indisputably perform at least some work. Warf v. Shalala, 844 F. Supp. 285, (W.D. Va. Feb. 17, 1994).

As such, the undersigned cannot find that the ALJ's decision and the evidence of record provide substantial evidentiary support for the classification of Plaintiff's work itself, nor can it be said that the ALJ followed the directives of SSR 00-4p in relying on the VE's testimony in so classifying it. This flaw at the outset, combined with the failure to conduct or explain a transferable skills analysis in accordance with the regulations, renders the ALJ's determination unsupported by substantial evidence.

### 3. Transferable skills under 20 CFR § Part 404, Subpart P, App. 2 § 202.07

"Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82.41(2)((b).

> Where transferability is at issue, it is most probable and meaningful among jobs in which: (1) the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed (i.e, from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job);
> (2) the same or similar tools and machines are used; and
> (3) the same or similar raw materials, products, processes or services are involved.
> A complete similarity of all these factors is not necessary. There are degrees of transferability ranging from very close similarities to remote and incidental similarities among jobs.

SSR 82.41(4)(a). Accordingly, in determining whether skills are transferable to other jobs, SSR

82.41(2)(d) directs that "close attention must be paid to the actual complexities of the job in dealing with data, people or objects and to the judgments required to do the work." Although the regulations thus do not prohibit an ALJ from finding transferable skills from past work with an SVP of 3, SSR 82-41 cautions against such a finding unless a transferable skills analysis reveals that it is warranted.

SSR 82-41 also provides that a VE's testimony should inform an ALJ's determination of transferability, *unless* the work is at such a minimum level of skill that there simply is no need to consult a VE in order to make that determination. Otherwise, a careful consideration of the factors should be undertaken. Though the testimony of a VE "may, and ordinarily should [be] require[d]," it is the ALJ who is "expected to make the ultimate determinations as to the skill levels of a claimant's vocationally relevant past jobs and the relationship of those skills to potential occupations." Hall v. Harris, 658 F.2d 260, *267 (4th Cir. 1981) (internal citations omitted).

Although there appears to be an assumption on the part of the VE and the ALJ that similar skills, activities or perhaps services were involved, it is unclear on what that assumption was based, exactly. Nor can it be said on this record that "close attention [was] paid to the actual complexities of the job in dealing with data, people or objects and to the judgments required to do the work." SSR. 82.41(d). The VE testified that from her PRW, Plaintiff obtained the skill of care-giving, which would transfer to the job of companion:

> **309.677-010 COMPANION (domestic ser.)**
> Cares for elderly, handicapped, or convalescent persons: Attends to employer's personal needs [PERSONAL ATTENDANT (domestic ser.)]. Transacts social or business affairs [SOCIAL SECRETARY (clerical)]. Reads aloud, plays cards, or other games to entertain employer. Accompanies employer on trips and outings. May prepare and serve meals to employer.
> *GOE: 10.03.03 STRENGTH: L GED: R3 M2 L3 SVP: 3 DLU: 77* [6]

---

[6] U.S. Department of Labor, *Dictionary of Occupational Titles ("DOT")* 240 (309.677-010 (4th Ed. 1991).

Of course, Plaintiff arguably had experience doing only one to two of these five tasks. She did prepare meals, and *might* have "attended to personal needs," depending on whether that is meant in a physical sense - if so, it appears Plaintiff did not. Further, the undersigned is unable to determine where the "skill" of "caregiving" the VE referenced actually came from. As the descriptions for each illustrate, there is no such skill or activity as "caregiving" listed in the information for either position in the Dictionary of Occupational Titles.[7] The companion publication, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, also does not mention "caregiving" with respect to the Occupational Exploration Group shared by both positions:

> Skills and abilities required include: Using common se[n]se and special skills in attending to needs of a specific individual or group; following oral and written instructions, using eyes, hands, and fingers to handle equipment and instruments and collect medical data, standing and walking for extended periods; adapting to emergencies and frequent changes in job duties; and lifting patients in attending to their needs.[8]

As a result, the undersigned cannot conclude on this record that there is substantial evidence to support the ALJ's finding that these two positions shared common or transferable skills. This is especially so in light of the ALJ's statement that, "[p]ursuant to SSR 00-4p, [she had] determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (R. 24).

Moreover, the ALJ's decision lacks an explanation for her finding of transferability, and does not indicate she conducted a transferable skills analysis in conformity with the regulations. Although a "complete similarity of all these factors is not necessary[, t]here are degrees of transferability ranging from very close similarities to remote and incidental similarities among

---

[7] U.S. Department of Labor, *Dictionary of Occupational Titles ("DOT")* 240 (309.677-010), 257 (354.377-014) (4th Ed. 1991).

[8] U.S. Department of Labor, *Selected Characteristics of Occupations ("SCO") Defined in the Revised Dictionary of Occupational Titles*, 377.

jobs." SSR 82.41(4)(a). An ALJ's findings and explanation will suffice if they are "substantially consistent with the scope of analysis described in [the relevant regulation(s)]." Payne, 946 F.2d at *1084 (ALJ's analysis was sufficient when his reasoning and supporting facts corresponded to the factors in the regulations and the factors a claimant would rely on in rebutting the presumption). This is consistent with SSE 82.41(2)(d)'s mandate that "close attention must be paid to the actual complexities of the job in dealing with data, people or objects and to the judgments required to do the work."

This record reflects only that the ALJ asked the VE if there were transferable skills, and the VE simply stated that there were. Neither the VE in his testimony, nor the ALJ in her decision, mention any of the relevant factors:

> Q        Okay, thank you. Were there any skills prior to that semi-skilled position that we're going -- that are transferable to either a light or a sedentary exertional level?
> A        The care giving skills would transfer to light work as a companion. And that DOT code number is 309.677-010 and it's semi-skilled, SVP of 3, and light. And there are, approximately, 230,000 positions such as that in the national economy.
> Q        All right, thank you.

(R. 52).

> The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills. The vocational expert responded and testified that representative occupations such an individual could perform include: companion, which the vocational experts testified is light, semiskilled work with an SVP of 3, DOT #309.677-010. The vocational expert testified that there are 230,000 companion jobs available nationally. These jobs could be done with little vocational adjustment with the skills acquired by past relevant work.

(R. 23).

This situation is similar to that in Pyles, where the Fourth Circuit held that the ALJ's finding was unsupported by substantial evidence when there was "no evidence in the record [] detailing specific skills acquired by [the claimant]" that were transferable. 849 F.2d at *848.

Further, the <u>Pyles</u> court found the VE's classification of a claimant's prior work was "particularly suspect" when it was "clear from the record that, despite the title ascribed to it, [the prior work] cannot, in any realistic sense, be described as managerial:"

> Although a claimant may acquire transferable skills in the performance of semi-skilled work, the transferability of skills depends on "the similarity of occupationally significant work activities" between two jobs. It strains credulity to conclude, **particularly without any discussion of specific skills**, that . . . transferable skills . . . [were] impart[ed].

<u>Id.</u> (emphasis added) (internal citations omitted). Further, SSR 82.41(d) strongly suggests that there were no transferable skills here:

> At the lower level of semiskilled work (next to unskilled) are jobs like those of a chauffeur and some sewing-machine operators. Also at the lower level of semiskilled work would be such jobs as room service waiter, in which the worker serves meals to guests in their rooms, taking silverware, linen, plates and food on a tray or cart and then removing the equipment from rooms after guests have eaten. **Transferability of skills is not usually found from this rather simple type of work. When job activities are at this minimal level of skill, an** adjudicator or administrative law judge (**ALJ) can often, without assistance, make the determination that the worker has very little vocational advantage over an unskilled person and does not have transferable skills**. Slightly more complex, at a higher level of semiskilled work, are jobs like that of a nurse aide, who may also serve food to people. A nurse **aide ordinarily performs other tasks which do not provide a special advantage over unskilled workers, such as dusting and cleaning rooms, changing bed linens, and bathing, dressing and undressing patients. The only duties which suggest transferable skills are those related to "nurse" rather than "aide"** -- taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output. However, **these occasional or incidental parts of the overall nurse aide job**, which are a small part of a higher skilled job (nurse), **would not ordinarily give a meaningful vocational advantage over unskilled**. The extent of such duties, however, may vary with individual nurse aides.

<u>Id.</u> (emphasis added). Plaintiff's work here appears to be highly analogous to the work of aide, which the above example from SSR 82.41(d) indicates, absent extraordinary circumstances, would *not* provide a meaningful vocational advantage over unskilled work and thus are not "transferable skills." DI 25015.017(C)(2) likewise strongly suggests that the tasks Plaintiff performed in this work are unskilled, listing "basic food preparation" as an explicit example of an unskilled task.

Had the ALJ elicited specific VE testimony as to how mere cleaning and meal preparation constituted skills that were transferable, and explained how she resolved the conflict, that could have satisfied the directives of the regulations and the court's ability to conduct meaningful review. Though the Commissioner cites one case, Dameron v. Colvin, 2013 WL 1909870 (M.D. N.C. 2013) aff'd by unpublished per curiam opinion, 559 Fed.Appx 245 (2014), in support of her argument that "the ALJ [was] not required to describe *how* these skills transfer," Dameron is clearly distinguishable from this case. Rather than supporting the Commissioner's position, Dameron actually provides a useful contrast with what the VE in this case did *not* do. In Dameron, the VE testified that:

> Mr. Dameron's past relevant work as a maintenance mechanic for telephone equipment, a cable splicer, and a farmer gave him the transferable skills of the abilities to use hand and power tools, read schematic diagrams, and assemble and disassemble objects in a sequence.
> All the skills "would transfer to bench work positions."
> Given Mr. Dameron's age, education, work experience, and RFC, he would be able to perform representative occupations such as a solderer, an assembler, and an electrical inspector.

Id. at *4 (internal citations omitted). In stark contrast to the situation before the undersigned now, the Dameron VE's classification of that plaintiff's prior work was otherwise supported by substantial evidence. Id. at *4. Secondly, the Dameron VE's testimony described both "skills" and "abilities" that Dameron had acquired, and which positions they transferred to. Presumably, that testimony was consistent and thus supported. Here, the VE has cited a single "skill" - "caregiving" - which the undersigned has been unable to locate in the DOT or the SCO (not with the information provided in this record, at least). The lists of work activities between the two positions here are too dissimilar to reconcile without further explanation. Presumably, the Dameron VE's basic assumptions, findings, and testimony were not inconsistent with the record, the DOT, and the SCO, as Dr. Beale's were here; they contained enough information for the

reviewing court to determine they were supported by substantial evidence. As such, to the extent that Dameron is helpful to either party, it is the Plaintiff.

In summary, these failures renders the undersigned unable to find that substantial evidence supports the ALJ's determination as to the classification of her prior work in the first instance, as there appears to be a great deal of dissimilarity between the two; nor does the transcript of the VE's testimony or the ALJ's decision provide any explanation to assist the undersigned on that point. Subsequently, it is additionally unclear how the ALJ determined that the VE's testimony was consistent with the DOT. As a result of those flaws, coupled with the ALJ's apparent failure to follow the directives of the Commissioner's regulations and policy interpretations, the undersigned is likewise unable to find that substantial evidence supports the ALJ's finding of transferable skills in the second instance.

## VII.    RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying the Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is not supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment (ECF No. 11 be **GRANTED**, Defendant's Motion for Summary Judgment (ECF No. 13) be **DENIED**, and the decision of the Commissioner be vacated and this case be **REMANDED** for further proceedings consistent with this report and recommendation.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge.   Failure to timely file objections to the Report and

Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 12th day of June, 2017.


MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE